IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| Kenneth Jeffreys. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:18-cv-00411 |
| | ) | |
| City of Greensboro, | ) | |
| d/b/a Greensboro Coliseum Complex, | ) | |
| a Political Subdivision of the State of North Carolina | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

LORETTA C. BIGGS, District Judge.

Plaintiff, Kenneth Jeffreys, brings this action against Defendant, the City of Greensboro d/b/a/ Greensboro Coliseum Complex, alleging violations of Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131 *et seq.* ("ADA"), as well as the Rehabilitation Act, 29 U.S.C. 794 *et seq.* (ECF No. 1.) According to Plaintiff, a double-leg amputee, the Greensboro Coliseum Complex is not readily accessible to wheelchair users because of its "inaccessible parking, inaccessible ramps, inaccessible paths of travel . . . and many other [barriers to access]." (ECF No. 20 at 5, 7.) Before the Court is Plaintiff's Motion for Summary Judgment. (ECF No. 19.) For the reasons stated below, Plaintiff's motion will be granted in part and denied in part.[1]

---

[1] On September 30, 2019, Defendant filed a motion captioned "Motion for Summary Judgment in Favor of a Nonmovant" pursuant to Federal Rule of Civil Procedure 56(f)(1). (ECF No. 23.) This filing was submitted after the deadline for dispositive motions, and Defendant has since clarified that its "motion" was mislabeled and was actually a request for the Court to exercise its discretion to award

# I.    BACKGROUND

## A.  The Parties

On Christmas Eve, 1992, Plaintiff was struck by a drunk driver.  (ECF Nos. 1 ¶ 4; 22-8 at 133–34.)  As a result of the accident, Plaintiff requires a wheelchair to ambulate.  (ECF No. 20-2 ¶¶ 5–6.)  In late 2017, Plaintiff began attending University of North Carolina at Greensboro ("UNC-G") basketball games at the Greensboro Coliseum Complex to watch his nephew play for the Spartans.  (*Id.* at ¶¶ 7–8.)  The Spartans play in the part of the Complex known as the Coliseum Arena.  (ECF No. 25-7 at 2.)  Plaintiff plans to continue attending games at the Coliseum Arena after his nephew graduates.  (ECF No. 20-2 ¶¶ 8, 15.)

Defendant, a public entity which receives federal financial assistance, owns and operates the Greensboro Coliseum Complex.  (ECF Nos. 6 ¶¶ 6, 9; 22 at 13 n.4.)  The Complex is an umbrella unit containing the Coliseum Arena, the ACC Hall of Champions, and various other buildings.[2]  (ECF No. 25-5 ¶ 4.)  The Coliseum Complex first opened in 1959, showcasing a large gym—then called the Greensboro Coliseum—and several smaller, satellite auditoriums.  (ECF No. 25-6 at 3.)  This large gym is the flagship of the Complex and is now called the "Coliseum Arena" (or "the Arena").  (ECF No. 25-5 ¶ 4.)  The Complex

---

summary judgment to a nonmovant under Rule 56(f)(1).  (ECF No. 31 at 6 n.4.)  Plaintiff has moved to strike Defendant's putative motion, (ECF No. 23), and accompanying brief, (ECF No. 26), as untimely.  (*See* ECF Nos. 27; 28 at 1.)  In addition, Plaintiff in his motion to strike also moves that Defendant's brief in opposition to Plaintiff's Motion for Summary Judgment likewise be stricken as untimely.  (*Id.*)  While the Court will deny Plaintiff's motion to strike, it will not construe Defendant's request pursuant to Rule 56(f)(1) as a proper motion for summary judgment.  Rather, the Court will treat Defendant's filings collectively as its brief in opposition to Plaintiff's motion for summary judgment.

[2] Those additional buildings include the Field House, Greensboro Aquatic Center, Odeon Theatre, Special Events Center, White Oaks Amphitheater, and the Piedmont Hall.  (ECF No. 25-5 ¶ 4.)

grew substantially after 1959. (ECF No. 25-6 at 3–4.) In 2011, the Complex expanded to include the new ACC Hall of Champions. (*Id.* at 4.) In addition, from 2012 to 2013, Defendant added $24 million in improvements to the Coliseum Arena. (*Id.*) During Phase One of these additions, in 2012, Defendant added a new scoreboard, 9,000 seats, and four luxury suites, among other improvements. (*Id.*) During Phase Two of the expansion, starting in mid-March 2013, Defendant continued to improve the Arena, primarily by expanding its existing concourse by 17,750 square feet and adding eight new concessions stands. (*See id.*) The record is unclear as to when in 2012 these alterations to the Arena began. (*See* ECF Nos. 20-5 at 5; 25-6 at 4.)

## B. The Parties' Contentions and Evidentiary Support

The heart of Plaintiff's case consists of his alleged difficulties entering and exiting the Coliseum Arena. According to Plaintiff's affidavit and deposition, (ECF Nos. 20-2; 22-8), each stage of his journey from his car to the Arena and back is difficult. For example, Plaintiff states that he cannot always find a handicapped parking space due to an inadequate number of such spots. (ECF No. 25-8 at 60–61.) Once parked and in his wheelchair, he has trouble approaching the ramps leading into the Arena due to unlevel sidewalks and chipped asphalt where water pools. (*Id.* at 48, 127–28.) Once he reaches the base of the ramps leading into the Arena, Plaintiff struggles to summit the ramps. (*Id.* at 24, 28, 46.) Upon exiting the Arena, Plaintiff has difficulty descending steep exterior ramps and was once ejected from his wheelchair after losing control of it on the way down the ramp. (*Id.* at 24, 41.) Finally, once Plaintiff returns to his vehicle, he may have to wait for the cars parked around him to leave before he has enough room to enter his car, even if he is parked in a handicapped space. (*Id.*

at 74–76.) Plaintiff's expert, Nicholas F. Heybeck, identified thirty-eight exterior barriers to accessibility around the Coliseum Complex. (*See* ECF No. 20-7 at 21–80.) These alleged barriers to access consist of, in the main, inadequate signage identifying accessible parking and accessible routes into the Complex's buildings; inadequate accessible parking spaces; curb ramps that are not smooth or are too steep; ramps that are too steep or lacked adequate handrails; and sidewalks that are too steep. (*See id.*) According to Heybeck's report, each of the barriers identified fell below federal guidelines designed to ensure that publicly operated facilities are accessible to the disabled. (*See id.* at 8–9.) Further, for each of the barriers, Heybeck also proposed a removal plan. (*Id.* at 9.) Heybeck believes all such barriers could be removed for no more than $140,008. (*Id.* at 15.) Plaintiff states in his affidavit that he encountered every obstacle listed in Heybeck's report. (ECF No. 20-2 ¶ 13.)

Defendant contests Plaintiff's claims, insisting that "[t]here is no factual dispute that Plaintiff has had access to basketball games;" that Plaintiff did not encounter most of the items identified in the Heybeck report; and that its basketball games are just as "accessible to and usable for Plaintiff as they are to a person without a disability." (*See* ECF No. 25 at 15, 18–19.) To support its arguments, Defendant points out that Plaintiff goes to "just about every game," and that Plaintiff's deposition testimony appears inconsistent with his later sworn affidavit that he encountered every obstacle in the Heybeck report. (*Id.*) In addition, Defendant provides declarations of the Supervisor of Maintenance and Deputy Director for the Greensboro Coliseum Complex, to argue that, generally, the Complex offers sufficient handicapped accessible parking as well as accessible routes into the Arena so that Plaintiff "could access the facilities in a manner comparable to a nondisabled person." (*See* ECF No.

25 at 8, 11, 18 (quoting *Tatum v. New Orleans City Park Improvement Ass'n*, No. 15-2508, 2016 WL 1660201, at *3 (E.D. La. Apr. 27, 2016).)

## II.    Overview of Title II of the ADA

Congress enacted the ADA to "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities."[3]    42 U.S.C. § 12101(b)(1).  Title II of the ADA "prohibits any public entity from discriminating against 'qualified' persons with disabilities in the provision or operation of public services, programs, or activities."  *Tennessee v. Lane*, 541 U.S. 509, 517 (2004).  To prove a Title II violation, "plaintiffs must show: (1) they have a disability; (2) they are otherwise qualified to receive the benefits of a public service, program, or activity; and (3) they were denied the benefits of such service, program, or activity, or otherwise discriminated against, on the basis of their disability."  *Nat'l Fed'n of the Blind v. Lamone*, 813 F.3d 494, 502–03 (4th Cir. 2016).

A public entity discriminates against a qualified individual with a disability, and so violates Title II of the ADA, when it fails "to take reasonable measures to remove architectural and other barriers to accessibility."  *See Tennessee v. Lane*, 541 U.S. at 531; 42 U.S.C. § 12182(b)(2)(A)(iv) (defining discrimination under Title III to include "a failure to remove architectural barriers . . . in existing facilities . . . where such removal is readily achievable").  To help implement this non-discrimination mandate, Congress authorized the Attorney

---

[3] Plaintiff brought this suit under Title II of the ADA and under the Rehabilitation Act.  (ECF No. 1 ¶ 8-36.)  Analysis of Rehabilitation Act claims folds into an ADA analysis "[b]ecause the language of the two statutes is substantially the same."  *Doe v. Univ. of Md., Med. Sys. Corp.*, 50 F.3d 1261, 1264 n.9 (4th Cir. 1995); *Seremeth v. Bd. of Cty. Comm'rs Frederick Cty.*, 673 F.3d 333, 336 n.1 (4th Cir. 2012) ("Claims under ADA's Title II and the Rehabilitation Act can be combined for analytical purposes because the analysis is substantially the same.") (internal quotation omitted).

General to promulgate regulations implementing Title II.  *Brown v. Cty. of Nassau*, 736 F. Supp. 2d 602, 611 (E.D.N.Y. 2010); 42 U.S.C. § 12134(a) ("[T]he Attorney General shall promulgate regulations . . . that implement [Title II].").

These regulations "provide different standards for facilities depending upon whether the facility was built before or after Title II's effective date, January 26, 1992."  *Brown*, 736 F. Supp. 2d at 611.  Facilities constructed prior to January 26, 1992 are known as "existing facilities."  28 C.F.R. § 35.150; *see also, e.g.*, *Daubert v. Lindsay Unified Sch. Dist.*, 760 F.3d 982, 986 (9th Cir. 2014).  Facilities constructed after this date are known as "new" facilities.  28 C.F.R. § 35.151; *Daubert*, 760 F.3d at 985–86.  Finally, the portion of facilities altered after January 26, 1992 are known as "alterations," regardless of when the facility was initially constructed.  28 C.F.R. § 35.151(b).  As set forth below, the extent to which public entities must accommodate disabled individuals depends on whether the facility in question is existing, new, or altered.

Existing facilities must operate such that their "service, program, or activity, when viewed in its entirety, is readily accessible to and usable by individuals with disabilities."  28 C.F.R. § 35.150(a).  Thus, if a stadium is an existing facility, it "is not required to make each and every portion of [the stadium] readily accessible in order to comply with the ADA; instead, the applicable test under the implementing regulations is whether the stadium . . . *when viewed in its entirety*, [is] readily accessible and usable by individuals with disabilities."  *Brown*, 736 F. Supp. 2d at 612 (emphasis added).

New facilities, however, must meet "[a] higher standard."  *Brown*, 736 F. Supp. 2d at 611.  They must be "readily accessible to and usable by individuals with disabilities."  28 C.F.R.

§ 35.151(a)(1). The standard for alterations is higher still—any facility or part of a facility altered after the ADA's effective date must be "readily accessible to and usable by individuals with disabilities" to "the maximum extent feasible." *Id.* at § 35.151(b)(1).

This requirement to make alterations readily accessible to the maximum extent feasible extends to the "path of travel" leading up to the altered area of a facility so long as the alteration "affects or could affect the usability of or access to an area of a facility that contains a primary function" unless "the cost and scope of such alterations [to the path of travel] is disproportionate to the cost of the overall alteration." *See* 28 C.F.R. § 35.151(b)(4). The path of travel to the altered area includes parking, curb ramps, sidewalks, and interior and exterior ramps. *See id.* at § 35.151(b)(4)(ii)(a); *Tatum*, 2016 WL 1660201, at *5. A "primary function" is "a major activity for which the facility is intended." 28 C.F.R. § 35.151(b)(4)(i). Alterations to the path of travel are disproportionate to the cost of the overall alteration if they "exceed[] 20% of the cost of the alteration to the primary function area." *Id.* at § 35.151(b)(4)(iii).

There are two routes or "safe harbors" by which a defendant can show that its facility is "readily accessible" to the disabled. *See Cherry v. City Coll. of S.F.*, No. C 04-04981 WHA, 2006 WL 6602454, at *2 (N.D. Cal. Jan. 12, 2006). First, the newly constructed or altered facility can show it was "constructed in conformance with the Americans with Disabilities Act Accessibility Guidelines for Buildings and Facilities ("ADAAG"), 28 C.F.R. Pt. 36, App. A, or with the Uniform Federal Accessibility Standards ("UFAS"), 41 C.F.R. Pt. 101–19.6 App. A." *Daubert*, 760 F.3d at 986 (citing 28 C.F.R. § 35.151 (c)(1)-(3)). "The ADAAG is a comprehensive set of structural guidelines that articulates detailed design requirements to accommodate persons with disabilities." *Id.* The UFAS are the Rehabilitation Act's analogue

to the ADAAG. *See Greer v. Richardson Indep. Sch. Dist.*, 472 F. App'x 287, 291 n.2 (5th Cir. 2012). The two guidelines "impose materially identical architectural requirements," but the UFAS only apply to "construction carried out with federal funding by any state or local entity." *See Mote v. City of Chelsea*, 284 F. Supp. 3d 863, 883 (E.D. Mich. 2018). These guidelines are updated periodically and the controlling standard that new or altered facilities must comply with depends on when construction commenced. *Daubert*, 760 F.3d at 986 n.2. Specifically:

> If physical construction or alterations commence[d] after July 26, 1992, but prior to September 15, 2010, then new construction and alterations . . . must comply with either UFAS or the 1991 [ADAAG] . . . . *If physical construction or alterations commence[d] on or after September 15, 2010 and before March 15, 2012, then new construction and alterations . . . may comply with . . . [t]he 2010 [ADAAG], UFAS, or the 1991 [ADAAG] . . . . If physical construction or alterations commence[d] on or after March 15, 2012, then new construction and alterations . . . shall comply with the 2010 [ADAAG].*"

28 C.F.R. § 35.151(c)(1)–(3) (emphasis added). Thus, compliance with the applicable federal guidelines represents the first safe harbor shielding a defendant from liability for disability discrimination.

Second, a facility can depart from these standards and still be "readily accessible" to the disabled if it is "clearly evident that equivalent access to the facility or part of the facility is thereby provided." *Greer v. Richardson Indep. Sch. Dist.*, 752 F. Supp. 2d 746, 756 (N.D. Tex. 2010), *aff'd*, 472 F. App'x 287 (5th Cir. 2012)) (quoting 28 C.F.R. § 35.151(c)); *see also Chaffin v. Kan. State Fair Bd.*, 348 F.3d 850, 860 (10th Cir. 2003). If the defendant opts for this second safe harbor, it bears the burden of proving equivalent access to the facility. *Cherry*, 2006 WL 6602454, at *5. This is no easy showing. *See Kirola v. City and Cty. of S.F.*, 860 F.3d 1164, 1181 (9th Cir. 2017) ("[F]ocusing on overall accessibility [may be] acceptable when evaluating *existing*

facilities, [but] avoiding minor variations is exactly what ADAAG requires of new or altered facilities.") (internal quotations omitted); *Chapman v. Pier 1 Imps. (U.S.), Inc.*, 631 F.3d 939, 945–46 (9th Cir. 2011) (explaining that "obedience to the spirit of the ADA" is not enough to excuse violations of the ADAAG, as compliance was intended to be "a matter of inches"). Furthermore, and crucial for this case, this second safe harbor is only available if the physical construction or alteration at issue commenced prior to March 15, 2012. *Compare* 28 C.F.R. § 35.151(c)(1)-(2), *with* 28 C.F.R. § 35.151(c)(3).

## III. Discussion

In this case, Defendant does not dispute that it is a public entity, that Plaintiff has a disability, or that Plaintiff is otherwise qualified to receive the benefits of a public service, program, or activity. (ECF Nos. 6 ¶ 9; 22 at 15.) Thus, the key inquiry is whether Defendant discriminated against Plaintiff on the basis of his disability by denying him access to UNC-G basketball games. (*See* ECF No. 25 at 15.) However, before discussing the merits of Plaintiff's motion, it appears that Defendant has raised the threshold issue of standing. Though Defendant does not overtly state that Plaintiff lacks standing, Defendant's contention that Plaintiff has not encountered most of the barriers to access he complains of could be read to argue that Plaintiff lacks standing to sue for the removal of such barriers. (*See id.* at 18–19.) Moreover, "[f]ederal courts must determine that they have jurisdiction before proceeding to the merits," and thus must independently determine that plaintiffs have standing to bring suit. *See Lance v. Coffman*, 549 U.S. 437, 439 (2007). Thus, the Court must determine whether Plaintiff has standing and, if he does, decide "the scope of his standing." *Chapman*, 631 F.3d at 950.

## A. Standing Under Title II

When a plaintiff moves for summary judgment, to establish Article III standing, that plaintiff must establish that there is no genuine issue of material fact that the plaintiff has (1) suffered an injury in fact, (2) traceable to the defendant, that is (3) likely to be redressed by a favorable decision. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (identifying the three elements of standing and explaining that each "must be supported . . . with the manner and degree of evidence required at the successive stages of the litigation); *Dep't of Commerce v. United States House of Representatives*, 525 U.S. 316, 329 (1999) ("To prevail on a Federal Rule of Civil Procedure 56 motion for summary judgment . . . a plaintiff must establish that there exists no genuine issue of material fact as to justiciability.").

Of these three elements, only the first—injury in fact—is possibly at issue here. An injury in fact must be both "concrete *and* particularized." *Griffin v. Dep't of Labor Fed. Credit Union*, 912 F.3d 649, 653 (4th Cir. 2019) (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1545 (2016)). An injury is "concrete" when it is "real and not abstract." *Id.* at 1548 (quoting *Spokeo*, 136 S. Ct. at 1548). An injury is "particularized" when it "affect[s] the plaintiff in a way that is 'individual.'" *Id.* at 654 (quoting *Lujan*, 504 U.S. at 560 n.1). Furthermore, if, as here, an ADA plaintiff pursues injunctive relief, he must establish that he "encountered an access barrier and either intends to return or is deterred from returning to the facility."[4] *Kirola*, 860

---

[4] Alternatively, ADA plaintiffs can demonstrate standing by showing that they are aware of barriers to access and that those barriers deter them from visiting the facility. *See, e.g.*, *Twede v. Univ. of Wash.*, 309 F. Supp. 3d 886, 898 (W.D. Wash. 2018). This route to standing is not at issue here because Plaintiff goes to UNC-G basketball games and plans to continue doing so. (ECF No. 20-2 ¶¶ 14–15.)

F.3d at 1174. This intention to return to the facility need only be "plausible." *Griffin*, 912 F.3d at 655 (citing *Nanni v. Aberdeen Marketplace, Inc.*, 878 F.3d 447, 455–56 (4th Cir. 2017)).

A special standing problem arises in ADA cases where a disabled person encounters at least one barrier to access and then sues for the removal of barriers that they have not personally encountered. *See, e.g.*, *Kirola*, 860 F.3d at 1175 n.4. The Fourth Circuit and this district do not appear to have specifically addressed whether such a plaintiff has standing to sue for the removal of every barrier at the facility or just the barriers that individual personally encountered. However, the federal courts which have directly addressed this question appear to strongly agree that once a plaintiff establishes standing to sue for the removal of one barrier, they need not show that they personally encountered every other barrier in the facility that they seek to remove. *See Kirola*, 860 F.3d 1175 n.4; *Kreisler v. Second Ave. Diner Corp.*, 731 F.3d 184, 188 (2d Cir. 2013); *Steger v. Franco, Inc.*, 228 F.3d 889, 894 (8th Cir. 2000); *Harty v. Burlington Coat Factory of Pa., L.L.C.*, No. 11–01923, 2011 WL 2415169, at *11 (E.D. Pa. June 16, 2011); *Greer v. Richardson Indep. Sch. Dist.*, 752 F. Supp. 2d at 758. *But see Brother v. CPL Invs., Inc.*, 317 F. Supp. 2d 1358, 1368 (S.D. Fla. 2004) ("Plaintiffs do not have standing to complain about alleged barriers which they were unaware of at the filing of their complaint."). Rather, "[o]nce a plaintiff has proven standing to challenge one barrier at a particular facility, that plaintiff has standing to challenge all barriers related to her disability at that facility." *Kirola*, 860 F.3d 1175 n.4. As the Ninth Circuit explained in *Doran v. 7-Eleven, Inc.*, a contrary rule "would burden [defendants] with more ADA litigation, encourage piecemeal compliance . . . and ultimately thwart the ADA's remedial goals of eliminating widespread discrimination against the disabled

and integrating the disabled into the mainstream of American life."[5] 524 F.3d 1034, 1047 (9th Cir. 2008).

Here, Plaintiff presents evidence that he has encountered thirty-eight barriers to access at the Coliseum Complex and that all thirty-eight caused him harm. (*See* ECF Nos. 20-2 ¶ 13; 20-7 at 21–80.) Encountering such barriers to access is a concrete and particularized harm. *See Nanni*, 878 F.3d at 454–55 (holding that a disabled individual who alleged that architectural barriers caused him harm pled an injury that was "concrete and particularized"). Moreover, based on Plaintiff's statements, Plaintiff has standing to sue for injunctive relief as it is "plausible," indeed, likely, that he will return to the Greensboro Coliseum.[6] *See Griffin*, 912 F.3d at 655–56. Thus, Plaintiff has established standing to sue for, at the very least, the removal of any of the barriers to access he personally encountered.

Having determined that Plaintiff has standing, the Court must next determine the exact scope of Plaintiff's standing. Defendant argues that despite Plaintiff's affidavit to the contrary, Plaintiff's deposition testimony reveals that he only encountered a handful of items listed in

---

[5] Though *Doran* "involved a challenge under Title III of the ADA, which addresses discrimination in public accommodations, rather than Title II, which applies to discrimination in public services" the constitutional standing analysis in Title II and Title III standing cases is the same. *See Kirola*, 860 F.3d, at 1174 n.3.

[6] Plaintiff has stated that he still "enjoy[s] attending UNC Greensboro basketball games" and that he intends to return to the Coliseum both to cheer on the Spartans and as an ADA tester. (ECF No. 20-2 ¶¶ 14–15.) In light of this clearly stated intent, Plaintiff's habit of going to "just about every [Spartans] game," (ECF No. 25-8 at 28), and Plaintiff's nearby residence in Raleigh, (*id.* at 6), the Court concludes it is perfectly plausible that Plaintiff will return to the Coliseum Complex. *See Payne v. Chapel Hill N. Props., LLC*, 947 F. Supp. 2d 567, 573 (M.D.N.C. 2013) ("In assessing the plausibility of a plaintiff's claim that [he] is likely to return to the site of the discrimination (at least once the barriers to [his] return are removed), courts often find the following factors helpful: (1) the plaintiff's proximity to the defendant[]](2) the plaintiff's past patronage; (3) the definitiveness of the plaintiff's plan to return; and (4) the plaintiff's frequency of nearby travel.") (internal quotation and citation omitted).

the Heybeck report, specifically those pertaining to "(1) the temporary accessible parking area, (2) un-level concrete, and (3) an exterior ramp."[7] (*See* ECF No. 25 at 6, 12, 18.) However, in the absence of binding Fourth Circuit precedent, this Court will join the numerous other courts that have found that "[o]nce a plaintiff has proven standing to challenge one barrier at a particular facility, that plaintiff has standing to challenge all barriers related to [his] disability at that facility." *Kirola*, 860 F.3d 1175 n.4. Plaintiff has clearly demonstrated standing for some of the items contained in the Heybeck report, such as Item 27, a steep ramp at the south end of the Coliseum Arena. (*See* ECF Nos. 20-7 at 61; 22-8 at 122–23.) Thus, having demonstrated standing to sue for the removal of the access barriers both parties agree Plaintiff encountered, Plaintiff has established his standing to challenge all barriers at the facility related to his disability. All the barriers identified by Heybeck relate to Plaintiff's disability, mobility impairment. (ECF No. 20-7 ¶ 2.) Thus, Plaintiff has standing to sue for the removal of all barriers at the facility, which begs the question: what is the facility at issue?

Here, if the facility is the entire Greensboro Coliseum Complex, then Plaintiff has standing to sue for the removal of all items listed in Heybeck's report. However, if the facility is only the Coliseum Arena, then Plaintiff appears to lack standing to sue for the removal of items 30 and 31, both of which relate to the entrance to a separate building, the ACC Hall of Champions. (*See* ECF No. 20-7 at 66–68.) While Plaintiff claimed in his affidavit to have encountered these barriers outside the ACC Hall of Champions, (*see* ECF No. 20-2 ¶ 13), he indicated in his deposition that he has never visited the Hall of Champions. (ECF No. 25-8

---

[7] These barriers appear to correspond to items 20, 31, and 27 respectively in the Heybeck report. (*See* ECF Nos. 20-7 at 49–51, 61, 67–68; 22-8 at 118–19, 123–24.)

at 126.)  Thus, a genuine issue of fact would appear to exist as to Plaintiff's standing to sue for the removal of items 30 and 31 unless he can show that the "facility" at issue is the entire Greensboro Coliseum Complex, which includes both the Coliseum Arena and the ACC Hall of Champions.  (*See* ECF No. 25-5 ¶ 4.)

Determining the facility at issue is not straightforward.  The applicable regulation defines a "facility" as "*all or any portion of buildings*, structures, sites, *complexes*, equipment, rolling stock or other conveyances, roads, walks, passageways, parking lots, or other real or personal property, including the site where the building, property, structure, or equipment is located."  *See* 28 C.F.R. § 35.104 (emphasis added).  This definition does not resolve the quandary as the Greensboro Coliseum Complex, is a "complex," while the Greensboro Arena is both a "building" and a "portion of . . . [a] complex."  Thus, both qualify as facilities per the guiding regulation.  Nor has the Court located any binding law on how to define the facility at issue during a facility-by facility ADA standing analysis.  At least one recent case, *Twede v. University of Washington*, does counsel in favor of defining the facility at issue as the Coliseum Arena, which would lead the Court to conclude that Defendant has raised a genuine issue of fact as to Plaintiff's standing to sue for removal of the barriers to accessing the ACC Hall of Champions.  *See* 309 F. Supp 3d 886 (W.D. Wash. 2018).  In *Twede*, plaintiffs sued for the removal of access barriers found in eighty-six parking lots scattered throughout the University of Washington's campus.  *See id.* at 897.  Plaintiffs, however, had only visited thirty-five of the lots.  *Id.*  The *Twede* court found that because the plaintiffs referred to the parking lots throughout their briefing as separate "facilities," and because the applicable guidelines require a given number of accessible parking spots on a lot-by-lot basis, each parking lot was its own

facility. *Id.* at 897–98. Thus, the *Twede* court concluded plaintiffs lacked standing to challenge barriers to access in lots they had not visited or alleged an intent to visit in the future. *Id.*

The Court respectfully disagrees with the *Twede* Court's approach and instead, will define the facility at issue—for purposes of an Article III standing inquiry—as the entire Greensboro Coliseum Complex for the following reasons. First, "[i]t is important that we do not take a cramped view of standing in civil rights cases, lest we impair the remedial purpose Congress had in mind when enacting civil rights statutes." *Griffin*, 912 F.3d at 653; *Doran*, 524 F.3d at 1039. Second, the Court finds that this broader definition of "facility" compatible with the core purposes of the standing inquiry: "assess[ing] whether the plaintiff has a sufficiently personal stake in the lawsuit to justify the invocation of federal court jurisdiction." *Nanni*, 878 F.3d at 454 (internal quotations and citations omitted); *Massachusetts v. EPA*, 549 U.S. 497, 517 (2007) ("[T]he gist of the question of standing is whether [plaintiffs] have such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which [federal courts] so largely depend[] for illumination.") (internal quotation marks omitted). Here, Plaintiff has a sufficiently personal stake in the removal of mobility-impairment-related barriers at the ACC Hall of Champions to assure a sharp, adversarial presentation of the issues. *See Doran*, 524 F.3d at 1044 (holding that "a disabled plaintiff . . . will have a personal stake in the outcome of the controversy so long as [his] suit is limited to barriers related to [his] disability") (internal quotations omitted). Finally, the Court finds that this broader definition of facility for purposes of the standing inquiry will promote judicial economy by discouraging piecemeal litigation, a proper consideration when considering prudential standing. *See id.* at 1046.

In sum, the Court concludes that Plaintiff has standing to sue for the removal of each of the barriers listed in the Heybeck report. To start, there is no genuine factual dispute that Plaintiff encountered several of the barriers to access listed in the report. These encounters get plaintiff "inside the courthouse door and bring his Article III case forward for [the Court's] judicial evaluation." *Id.* at 1041–42. Next, the Court joins other courts across the country in concluding that Plaintiff's standing extends to every barrier to access related to his disability at the facility—not just those he has personally encountered. Finally, the Court concludes that the "facility" at issue for the purposes of the standing inquiry is the Greensboro Coliseum Complex, meaning that Plaintiff has standing to sue for the removal of barriers to access at the ACC Hall of Champions and the Coliseum Arena. Now, having determined that Plaintiff has standing to sue for the removal of each barrier to access identified in the Heybeck report, the Court will consider the merits of Plaintiff's motion for summary judgment.

## B. The Merits

Plaintiff's motion for summary judgment seeks "an order to alter [the] Greensboro Coliseum Complex to make [it] readily accessible and useable to the Plaintiff" by eliminating the thirty-eight alleged barriers to access identified in Heybeck's report.[8] (*See* ECF Nos. 1 ¶ 25; 19; 20 at 17, 20.) As earlier stated, there being no contest as to the first two element of Plaintiff's Title II claim, the key inquiry is whether Defendant discriminated against Plaintiff on the basis of his disability by denying him access to UNC-G basketball games. (*See* ECF

---

[8] While Plaintiff's Complaint initially alleged that he experienced difficulties gaining entrance to the Coliseum Arena and once inside the Arena, (*see* ECF No. 1 ¶¶ 11, 17(D)-(F)), he appears to have abandoned any claims regarding his experience within the Coliseum Arena. (*See* ECF No. 29 at 4 (stating that Plaintiff's motion "does not address the interior barriers at the Property at all").)

No. 25 at 15.) To determine whether Defendant has discriminated the Court must first address which accessibility standard governs in this case. The Court must then determine whether Defendant has satisfied the appropriate governing standard.

(i)      *New Construction and Path of Travel to Alterations Standards Apply Here*

Plaintiff and Defendant disagree about which of the accessibility standards discussed above should govern this case. Defendant argues that because the Coliseum Arena was originally constructed in 1959, well prior to the effective date of the ADA, it is an "existing facility" and thus the existing facility standard articulated by 28 C.F.R. § 35.150 should govern this case. (ECF No. 25 at 16.) Defendant does concede that the ACC Hall of Champions was only constructed in 2011 and that parts of the Coliseum Arena have been altered since the ADA's effective date, potentially triggering the new construction, alteration, and path of travel standards. (*Id.* at 17–18.) However, Defendant contends these heightened standards are inapplicable because "[t]his case is not about access to the ACC Hall of Champions," and because "nothing in the evidentiary record shows that any [altered] part[s] of the Coliseum Arena. . . resulted in disability discrimination against Plaintiff." (*Id.* at 17.) Finally, Defendant argues that, to the extent renovations to the Coliseum Arena triggered the requirement to update the path of travel to the alterations, Defendant satisfied the requirement. (*Id.* at 17–18.) Plaintiff disagrees. He avers that because the ACC Hall of Champions was built in 2011, access to it is governed by the new construction standard and that because Greensboro made substantial alterations to the Coliseum Arena from 2012 to 2013, the path of travel to the Arena must meet the alteration standard. (ECF No. 20 at 19–22.)

The Court finds Plaintiff's analysis more persuasive. There is no dispute that the ACC Hall of Champions was constructed in 2011. (ECF No. 25-6 at 4.) Thus, access to the Hall must comply with the new construction standard. As for the thirty-six remaining alleged barriers to access, the Court agrees with Plaintiff that these should be scrutinized for compliance with the ADA's path of travel to alterations requirements. As discussed above, the path of travel requirements applies when an alteration is made to a facility that impacts a major activity of the facility unless it would be disproportionately expensive to alter the path of travel. *See* 28 C.F.R. § 35.151(b)(4). Here, Greensboro altered the Coliseum Arena by engaging in major renovations and additions to the Arena from 2012 to 2013. *See* 28 C.F.R. § 36.402(b)(1) (defining "alteration"); (ECF No. 25-6 at 4) (describing alterations to the Arena). These changes, which included adding new seats and a new concourse impact "a major activity for which [the Arena] is intended," that is, watching live events. 28 C.F.R. § 35.151(b)(4)(i); (ECF No. 25-6 at 4). Furthermore, Plaintiff's proposed alterations to the path of travel would not be disproportionate to the overall cost of the 2012 to 2013 renovations to the Coliseum Arena as the proposed fixes would cost approximately $140,000, far less than twenty percent of the $24 million Defendant spent on altering the Coliseum Arena. *See* 28 C.F.R. 35.151(b)(4)(iii); (ECF Nos. 20-7 ¶ 48; 22-6 at 4). Finally, the alleged barriers to access at issue (items 1–29 and 32–38 in the Heybeck report) all relate to parking, curb ramps, sidewalks, and ramps and are therefore part of the path of travel to the Arena. *See* 28 C.F.R. at 35.151(b)(4)(ii)(a); *Tatum*, 2016 WL 1660201, at *5. Thus, the path of travel standard governs the bulk of the barriers to access of which Plaintiff complains.

To show that Defendant's failure to remove these barriers to the Coliseum Arena constituted disability discrimination, Plaintiff must now show that the path of travel to the altered parts of the arena was not "readily accessible to and usable by individuals with disabilities" to "the maximum extent feasible." 28 C.F.R. § 35.151(b)(1). However, the exact definition of "readily accessible" depends on precisely when in 2012 the alterations to the Coliseum Arena commenced, a fact that does not appear to be before the Court. (*See* ECF Nos. 20-5 at 5; 22-6 at 4 (explaining that Phase One of the renovations began sometime in 2012 but not clarifying when in the calendar year).) If the major alterations to the Coliseum Arena commenced *before* March 15, 2012, then the controlling regulation is 28 C.F.R. 35.151(c)(2) which allows a Defendant to avoid liability by showing either (1) compliance with the 1991 or 2010 ADAAG or the UFAS, or by showing that that it is "clearly evident" that Greensboro has provided Plaintiff with "equivalent access" to the Coliseum Arena. 28 C.F.R. § 35.151(c)(2). However, if the alterations to the Arena commenced *on or after March 15, 2012*, the controlling regulation is 28 C.F.R. § 35.151(c)(3) which only permits a Defendant to avoid liability by showing compliance with the 2010 ADAAG. 28 C.F.R. § 35.151(c)(3).

Having determined different standards govern barriers to access to the ACC Hall of Champions, (items 30 and 31 in the Heybeck report), and barriers to access to the Coliseum Arena (items 1–29 and 32–38), the Court will now examine each set of barriers to determine if Plaintiff has satisfied his burden of showing that there is no genuine dispute of material fact so that he is entitled to summary judgment as a matter of law.

*(ii) Plaintiff's Motion Succeeds for Barriers to Accessing the ACC Hall of Champions*

Plaintiff's motion for summary judgment must be granted for items 30 and 31 in the Heybeck report as there is no genuine dispute that the ACC Hall of Champions is not readily accessible to the disabled. The ACC Hall of Champions was constructed in 2011. (ECF No. 25-6 at 4.) Therefore, it is new construction that must be "readily accessible to and useable by individuals with disabilities." 28 C.F.R. § 35.151(a)(1). Any physical construction begun between September 15, 2010 and March 15, 2012 is readily accessible if it (1) complies with the 1991 or 2010 ADAAG, or the UFAS, or (2) it is "clearly evident" that the newly constructed facility or portion of the facility is just as accessible to individuals with a disability as it would be if it was in compliance with these guidelines. *See id.* at § 35.151(c)(2). Here, Plaintiff has supported his motion by putting forward the expert report of Nicholas Heybeck, which identifies two barriers to access to the ACC Hall of Champions, items 30 and 31 respectively. First, at least one entrance to the Hall lacks the requisite directional signs identifying the nearest accessible entrance as required by Section 216.6 of the 2010 ADAAG. (ECF No. 20-7 at 66.) Second, the top of one of the ramps leading into the building does not transition smoothly as required by Sections 4.7.2 of the 1991 ADAAG and 406.2 of the 2010 ADAAG. (*Id.* at 67–68.) This shifts the burden to Defendant to prove the existence of a genuine issue of material fact regarding accessibility to the ACC Hall of Champions.

Defendant has not identified any genuine issues of material fact regarding the non-accessibility of the ACC Hall of Champions. Regarding Item 31, the unsmooth transition referred to by Defendant as the "un-level concrete," Defendant simply states that "Plaintiff does not attend activities at the ACC Hall of Champions." (ECF No. 25 at 20.) Greensboro

all together ignores Item 30, the lack of directional signs. (*See* ECF No. 25.) Instead of raising factual questions as to its compliance with the federal accessibility guidelines or arguing that, despite technical violations, it provided Plaintiff with equivalent access to the ACC Hall of Champions, Defendant appears to only argue that Plaintiff lacks standing. (*See* ECF No. 25 at 17.) The Court, having rejected this argument above, concludes that there is no genuine issue of material fact that the entrance to the Hall of Champions is not readily accessible to the disabled. Plaintiff's motion is therefore granted as to items 30 and 31.

(ii)     *Plaintiff's Motion Fails as to the Coliseum Arena*

Plaintiff has not, however, satisfied his burden of demonstrating that there is no genuine dispute as to any material fact as to the barriers to accessing the Coliseum Arena, items 1–29 and 32–38. Here, there is at least one genuine dispute as to a material fact.

A genuine issue of material fact exists as to when in 2012 Defendant started altering the Coliseum Arena. This is a "material" issue because Defendant's exact legal obligation to Plaintiff depends on when in 2012 it started to alter the Coliseum Arena; thus, the resolution of this question may well affect the outcome of the litigation. *See* 28 C.F.R. § 35.151(c)(2)-(3); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (explaining that an issue is only material if it "might affect the outcome of the suit"). As recounted above, if alterations began before March 15, 2012, then Defendant will have a far easier time showing that the Coliseum Arena is readily accessible to Plaintiff—it can avail itself of the safe harbor of showing compliance with any of the federal guidelines or of the "equivalent access" safe harbor. 28 C.F.R. § 35.151(c)(2). However, if construction began on or after March 15, Defendant will have to

clear the higher hurdle of showing that the thirty-six items in the Heybeck report that relate to the path of travel to the Coliseum Arena comply with the 2010 ADAAG. *Id.* at 35.151(c)(3).

Furthermore, the issue is "genuine" because if construction began before March 15, a reasonable fact-finder could find that the Coliseum Arena was readily accessible to Plaintiff despite any technical violations of the accessibility guidelines because Plaintiff had "equivalent access" to the facility. *See Anderson*, 477 U.S. at 248 (explaining that an issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party"). The Court bases this determination on several pieces of evidence.[9] First, Plaintiff did manage to attend "just about every game" the Spartans played at the Coliseum Arena. (ECF No. 25-8 at 28.) This is persuasive but non-dispositive evidence of equivalent access. *See Brown*, 736 F. Supp. 2d at 615 ("Although physical presence by the disabled at a facility constitutes some evidence of accessibility, it does not necessarily equate with the facility being *readily* accessible and usable by the disabled under the law."). Next, Plaintiff indicated in his deposition that there are paths in and out of the Arena where he does not encounter unlevel concrete. (ECF No. 25-8 at 130.) Likewise, Defendant provides the declaration of the Deputy Director of the Greensboro Coliseum Complex, contesting Plaintiff's claim that the Coliseum offers insufficient ADA-compliant accessible parking, declaring that "[m]ultiple parking lots at the Greensboro Coliseum Complex have accessible parking spaces with adjacent access aisles that

---

[9] The Court did not consider any discussion in the Heybeck report concerning the interior of the Coliseum Arena. As Defendant correctly noted in its evidentiary objection, Heybeck was only competent to speak to the exterior of the building as he did not examine the interior. (*See* ECF Nos. 20-7 ¶ 3; 24 at 1.) Accordingly, Defendant's evidentiary objection, (ECF No. 24), is sustained. This is of little relevance to the overall disposition of the case because Plaintiff is only seeking the removal of exterior barriers to access. (*See* ECF No. 29 at 4.)

are wide enough to permit a person using a wheelchair to get in and out of a vehicle." (ECF No. 25-4 ¶¶ 2, 6.) Finally, as discussed above, there is reason to doubt Plaintiff encountered every barrier to access identified in the Heybeck report. While this factual dispute does not impact Plaintiff's standing to sue for the removal of these barriers, it could impact a fact-finder's determination as to whether Plaintiff had equivalent access to the Coliseum, because, as Defendant argues, "[i]tems that Plaintiff never encountered did not affect his accessibility or usability."[10] (ECF No. 25 at 18.) Thus, the Court concludes that a reasonable fact-finder could find it "clearly evident" that Defendant provided equivalent access to the Coliseum Arena. Such a finding would mean that Defendant did not discriminate against Plaintiff in violation of Title II, even if some aspects of Defendant's facility are not in compliance with the governing accessibility guidelines. Accordingly, Plaintiff's motion for summary judgment must be denied as it relates to the Coliseum Arena.

### C. Conclusion

The Court has resolved that Plaintiff's standing extends to each of the thirty-eight alleged barriers to access identified in the report by Plaintiff's expert. With respect to the merits of Plaintiff's motion for summary judgment, the Court concludes that it must be granted as it relates to access to the ACC Hall of Champions as Defendant has failed to raise any genuine issue of material fact regarding the non-accessibility of the Hall. However, it must be denied as it relates to the Coliseum Arena because a genuine issue of material fact exists as

---

[10] To clarify, Defendant may have raised a genuine issue of material fact regarding the ACC Hall of Champions had it put forward facts indicating that the Hall of Champions was accessible to Plaintiff. Instead, it has contended that it need not demonstrate that the Hall was accessible to Plaintiff. Here, by contrast, Defendant argues the Coliseum Arena was, in fact, handicapped accessible.

to when in 2012 alterations to the Coliseum Arena commenced, and thus as to whether the Coliseum Arena was readily accessible to Plaintiff as defined by 28 C.F.R. § 35.151. Accordingly, the Court issues the following order.

**ORDER**

IT IS THEREFORE ORDERED that Plaintiff's Motion for Summary Judgment, (ECF No. 19), is GRANTED in part, and DENIED in part. The motion is granted as to items 30 and 31 in the Heybeck Report; and denied as to the remainder of the barriers identified in the report.

IT IS FURTHER ORDERED that Defendant's Motion for Summary Judgment in Favor of a Nonmovant, (ECF No. 23), is DENIED.

IT IS FURTHER ORDERED that Plaintiff's Motion to Strike, (ECF No. 27), is DENIED IN PART to the extent that the Court will consider the documents that Defendant filed as comprising its brief in opposition to Plaintiff's Motion for Summary Judgment.

IT IS FURTHER ORDERED that Defendant's Evidentiary Objection, (ECF No. 24), is SUSTAINED.

This, the 23rd day of December 2019.

/s/ Loretta C. Biggs
United States District Judge